UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FREEDOM MORTGAGE CORPORATION,

                      Plaintiff,                    **REPORT AND RECOMMENDATION**
                                                                              **23 CV 1309 (FB)(LB)**

        -against-

ALEX C. MCLAIN; NEW YORK CITY
ENVIRONMENTAL CONTROL BOARD
BUREAU; NEW YORK CITY PARKING
VIOLATIONS BUREAU; and NEW YORK
CITY TRANSIT ADJUDICATION BUREAU,

                      Defendants.
------------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

       Plaintiff Freedom Mortgage Corporation brings this diversity foreclosure action against defendants Alex C. McLain, the New York City Environmental Control Board Bureau ("ECB"), the New York City Parking Violations Bureau ("PVB"), and the New York City Transit Adjudication Bureau ("TAB"), seeking to foreclose on a mortgage encumbering certain real property located at 182-14 146th Road, Springfield Gardens, New York 11413 ("Property") pursuant to New York Real Property Actions and Proceedings Law ("RPAPL") Article 13. Complaint ("Compl.") ¶ 1. On June 13, 2023, the Clerk of Court noted entry of defendants' default. ECF No. 12. Plaintiff now moves for a default judgment and judgment of foreclosure and sale against all defendants. ECF No. 13–14. The Honorable Frederic Block referred plaintiff's motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 626(b). For the following reasons, it is respectfully recommended that plaintiff's motion for a default judgment should be granted in part and denied in part, and that plaintiff should be awarded damages as well as additional relief as specified.

1

## BACKGROUND

On or about April 14, 2017, defendant McLain executed and delivered a promissory note ("Note") to Federal Savings Bank ("FSB") in the principal amount of $402,573.00. Compl. ¶ 6; Note, annexed to Compl., ECF No. 1-3. As security for payment of the Note, McLain also executed a mortgage ("Mortgage") for the same amount on the Property, which was recorded with the City Register of the City of New York, Queens County ("City Register") on April 17, 2017. Compl. ¶¶ 1,7; Mortgage, annexed to Compl., ECF No. 1-4. The Mortgage was assigned to plaintiff on August 8, 2022 and recorded with the City Register on August 29, 2022. Compl. ¶ 8; Assignment of Mortgage, annexed to Compl., ECF No. 1-5.

Plaintiff alleges that McLain "failed to make payment[s] in accordance with the terms of the Note and Mortgage by not making the payment that was due on June 01, 2020 and subsequent payments." Compl. ¶ 8. Plaintiff alleges that McLain owes $379,970.41 plus interest which began to accrue on May 1, 2020, in addition to other assessments. Id. ¶ 10.

## PROCEDURAL HISTORY

Plaintiff commenced this action to foreclose on the Property on February 17, 2023. ECF No. 1. Summons were returned executed on defendants on April 3, 2023 and April 26, 2023. ECF No. 9–10. Despite being properly served, defendants have failed to respond to the complaint or otherwise defend against the instant action. On May 3, 2023, plaintiff filed a request for a certificate of default. ECF No. 11. On May 11, 2023, the Clerk of Court noted entry of default against all defendants pursuant to Federal Rule of Civil Procedure 55(a) ("Fed. R. Civ. P."). ECF No. 12. On July 3, 2023, plaintiff filed the instant motion. ECF No. 13. On August 18, 2023, the Court directed plaintiff to supplement the record to support its claim of liability against non-mortgager defendants ECB, PVB, and TAB; and to support its request for damages. ECF No. 15.

On August 31, 2023, plaintiff supplemented its motion for a default judgment with additional documents. See Supplemental Declaration in Support of Default Judgment (hereinafter "Supp. Decl."), ECF No. 16–17.

In support of its motion for a default judgment, plaintiff attaches a copy of the Note, Mortgage, and Assignment of Mortgage, ECF Nos. 13-5–13-6; the CPLR § 3012-b Certificate of Merit, ECF No. 13-8; an affidavit by Heather Marie Diaz, "FCL Specialist III" of Freedom Mortgage Corporation ("Diaz Aff."), which includes a copy of the notice and filing requirements set forth in the RPAPL §§ 1304 and 1306, ECF No. 13-3; a sworn statement of damages, Diaz Aff. ¶ 12; a bill of costs and attorney's fees, ECF Nos. 13-15–13-16; and a proposed judgment of foreclosure and sale ("Proposed J."), ECF No. 13-1. Plaintiff also submits a supplemental affidavit by Ms. Diaz ("Supp. Diaz Aff."), which includes a copy of defendant McLain's payment history, tax and billing records, ECF No. 16-1; and a list of the Property's ECB violations based on a title search, ECF No. 16-3.

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). plaintiff may then move for a default judgment against a defendant. Fed. R. Civ. P. 55(b)(2). If a defendant fails to appear or move to set aside the default under Rule 55(c), the Court may enter a default judgment on plaintiff's motion. Id.

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96

(2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); see also Finkel, 970 F. Supp. 2d at 119. Even though the well-pleaded allegations are deemed admitted, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default ... it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (citation omitted). If the unchallenged facts establish defendant's liability, the Court then determines the amount of damages due. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111).

Under New York law, a plaintiff in a foreclosure action must demonstrate "the existence of the mortgage and mortgage note, ownership of the mortgage, and the defendant's default in payment" on the loan secured by the mortgage.[1] Gustavia Home, LLC v. Bent, 321 F. Supp. 3d 409, 414 (E.D.N.Y. 2018) (citations omitted); see also United States v. Leap, No. 11-CV-4822, 2014 WL 1377505, at *2 (E.D.N.Y. Feb. 18, 2014), adopted by, 2014 WL 1383139 (E.D.N.Y.

---

[1] The Mortgage at issue herein provides that "[t]his Security Instrument is governed by Federal law and the law of New York State." Mortgage § 15.

4

Apr. 8, 2014) ("In the usual course, once a plaintiff mortgagee in a foreclosure action has established a *prima facie* case by presenting a note, a mortgage, and proof of default, it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor.") (citations omitted).

Furthermore, a plaintiff must demonstrate compliance with the notice and filing requirements of RPAPL §§ 1304 and 1306. N.Y. RPAPL § 1306(1) ("Each lender…shall file with the superintendent of financial services [the information set forth in RPAPL § 1306(2)]…as a condition precedent" to initiating any foreclosure proceeding); OneWest Bank, N.A. v. Simon, No. 14-CV-6622, 2019 WL 1320275, at *11 (E.D.N.Y. Mar. 22, 2019) (Compliance with Section 1304 "is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of this condition.") (citation omitted).

## DISCUSSION

### A. Foreclosure and Sale

Plaintiff's allegations in the complaint and the attached exhibits establish that it is entitled to a default judgment against defendant McLain as mortgagee of the Property. Plaintiff has filed the Note, the Mortgage, the assignment to plaintiff, and defendant McLain's default history to establish a *prima facie* case. ECF Nos. 13-3–13-6. Plaintiff alleges that McLain "failed to make payment in accordance with the terms of the Note and Mortgage by not making the payment that was due on June 1, 2020[.]"[2] Compl. ¶ 9. McLain's default triggered plaintiff's right to accelerate

---

[2] Plaintiff provides documents detailing defendant McLain's payment history of the loan along with a breakdown of escrow advances and other expenses. See Ex. A, annexed to Diaz Aff., ECF No. 13-3 at 7–10; see also Ex. A, annexed to Supp. Diaz Aff., ECF No. 16-1 at 8–11. However, these loan payment history documents are confusing, and plaintiff's affidavits provide no analysis or explanation of the documents. See Supp. Diaz Aff. ¶¶ 6–7. Notwithstanding counsel's lackluster effort in presenting this motion, the Court has reviewed the documents provided by plaintiff and finds that McLain stopped making regular payments on the Note in or around May 2020. See Ex. A, annexed to Diaz Aff., ECF No. 13-3 at 8; Ex. B, annexed to Supp. Diaz Aff., ECF No. 16-1 at 15. The documents also show that plaintiff made a number of late payments that were applied to payments due in January, February, March, April, and May 2020. Ex. A, annexed to Diaz Aff., ECF No. 13-3 at 8–10; Ex. B, annexed to Supp. Diaz Aff., ECF No. 16-1 at

the loan and to require full payment of the $379,970.41 in outstanding principal, with 3.8750% annual interest due on the Note and Mortgage. Id. ¶¶ 10–11; ECF No. 1-3 at 1.

Plaintiff has also complied with the pre-foreclosure notice and filing requirements of RPAPL §§ 1304 and 1306 requiring certain information to be sent to defendants and filed with the New York Superintendent of Financial Services. Diaz Aff. ¶ 9; Exs. B & C, annexed to Diaz Aff., ECF No. 13-3 at 11–36. On or around March 16, 2023, McLain was served a copy of the summons and complaint, ECF No. 13-9; additional notice as required by RPAPL § 1320, ECF No. 13-10; and a copy of the instant motion for default judgment, ECF No. 14. However, McLain has neither responded to the complaint nor rebutted plaintiff's *prima facie* showing that plaintiff is entitled to a default judgment. Accordingly, it is respectfully recommended that a default judgment should be entered against defendant McLain.

Plaintiff also requests that "[a] referee be appointed to sell the Property[.]" Compl. at WHEREFORE clause. Specifically, plaintiff requests that Stephanie S. Goldstone, Esq. be appointed as referee "to sell the Property at auction to the highest bidder, in accordance with RPAPL Article 13 [as outlined in the proposed judgment of foreclosure and sale.]" Id.; Proposed J. at 3–9. The appointment of a referee should be allowed where the plaintiff has "established a *prima facie* case[.]" E. Sav. Bank, FSB v. Evancie, No. 13-CV-878, 2014 WL 1515643, at *4 (E.D.N.Y. Apr. 18, 2014); Freedom Mortg. Corp. v. King, No. 19-CV-4833, 2020 WL 9813020, at *3 (E.D.N.Y. Apr. 28, 2020), report and recommendation adopted in part, No. 19-CV-4833, 2023 WL 3494738 (E.D.N.Y. May 17, 2023) (appointing Stephanie S. Goldstone, Esq. to be the referee in a similar context); OneWest Bank, NA v. Raghunath, No. 14-CV-3310, 2015 WL 5772272, at *7 (E.D.N.Y. Sept. 8, 2015), report and recommendation adopted sub nom., OneWest

---

15–18. It appears that the last payment made on the Note was on February 6, 2023, which was applied retroactively to the payment due on May 1, 2020. Ex. A, annexed to Diaz Aff., ECF No. 13-3 at 10.

Bank, N.A. v. Raghunath, 2015 WL 5774784 (E.D.N.Y. Sept. 29, 2015) (same). Accordingly, I respectfully recommend that Stephanie S. Goldstone, Esq. should be appointed as referee to conduct the sale of the Property under the terms set forth in the proposed judgment of foreclosure and sale.

### B. Non-Mortgagor Defendants

Plaintiff also names ECB, PVB, and TAB as non-mortgagor defendants, as they "have or claim to have some interest in or lien upon [the Property, which] has accrued subsequent to the lien of plaintiff's mortgage, or has been paid or equitably subordinated to plaintiff's mortgage…." Compl. ¶ 3. "New York [RRAPL] § 1311 provides that the necessary parties to a mortgage foreclosure action include: '[e]very person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff.'" Bank of Am., N.A. v. 3301 Atl., LLC, No. 10-CV-5204, 2012 WL 2529196, at *14 (E.D.N.Y. 2012) (quoting N.Y. RPAPL § 1311(3)). "This rule 'derives from the underlying objective of foreclosure actions—to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale'." Id. (quoting N.C. Venture I, L.P. v. Complete Analysis, Inc., 803 N.Y.S. 2d 95, 98 (2d Dep't 2005)). To establish liability as to a non-mortgagor defendant, plaintiff must allege "'nominal liability' — that any judgments the non-mortgagor defendant has against the mortgagor defendant, if asserted as a lien on the mortgage property, is subordinate to the plaintiff's lien." Courchevel 1850 LLC v. Rodriguez, No. 17-CV-6311, 2019 WL 2233828, at *7 (E.D.N.Y. May 22, 2019) (citation omitted); Gustavia Home, LLC v. Lawrence, No. 16-CV-4010, 2017 WL 4404434, at *4 (E.D.N.Y. June 22, 2017) ("Entry of default judgment against a non-mortgagor defendant is generally appropriate where the complaint alleges 'nominal liability'.") (citation omitted).

Here, plaintiff alleges that ECB, PVB, and TAB are judgment creditors with some interest or lien subordinate to plaintiff's mortgage. Compl. ¶ 3; Ex. B, annexed to Compl., ECF No. 1-2. In support of plaintiff's allegations of nominal liability as to ECB, plaintiff provides a "copy of a violations list pulled from a title search." Supp. Decl. ¶ 5; Ex. B, annexed to Supp. Decl., ECF No. 16-3. While it appears that plaintiff created this list of violations rather than submitting the documents resulting from the title search or other evidentiary documentation, the Court confirms that the list does, in fact, reflect the results of a "ECB Violations" search on the NYC CityPay website (https://a836-citypay.nyc.gov/citypay/ecb). See RL 900 Park, LLC v. Ender, No. 18-CV-12121, 2021 WL 738705, at *6 (S.D.N.Y. Feb. 25, 2021) (finding that a court may take judicial notice of search results on a governmental agency website, because they are public filings). The Court also confirms that the title search documents demonstrate ECB's interest in the subject Property. Accordingly, there is sufficient evidence to find that ECB is a necessary party in this matter and that default judgment should be entered against it.

However, plaintiff fails to allege the "particular nature of the interest in or lien on the real property" or attach any documentation to support its conclusory allegations of liability as to PVB and TAB. CIT Bank, N.A. v. Metcalfe, No. 15-CV-1829, 2017 WL 3841843, at *6–7 (E.D.N.Y. Aug. 17, 2017), adopted by, 2017 WL 3841852 (E.D.N.Y. Sept. 1, 2017) (citing N.Y. RPAPL § 202-a). Indeed, plaintiff states that PVB and TAB "were added to the action as a precaution as this property lies in Queens County." Supp. Decl. ¶ 5. Absent title searches or some other evidentiary documentation reflecting "monies owed by the mortgager defendant[] to the non-mortgagor defendant[s]," plaintiff has not sufficiently pled a claim against these defendants under New York State law. CIT Bank v. Dambra, No. 14-CV-3951, 2015 WL 7422348, at *6 (E.D.N.Y. Sept. 25, 2015), adopted by, 2015 WL 7430006 (E.D.N.Y. Nov. 20, 2015) ("[P]laintiff must provide

8

'detailed facts' related to the interest in or lien on the property" to satisfy RPAPL § 202 (citations omitted)). Accordingly, plaintiff's motion for a default judgment should be denied as to defendants PVB and TAB and the claims against these defendants should be dismissed without prejudice.

### C. Damages

It is well established that a default constitutes an admission of well-pleaded factual allegations in the complaint, *except* those relating to damages. Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); see also Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."). On a motion for a default judgment, the plaintiff has the burden to prove the amount of damages with a "reasonable certainty." Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, 109 F.3d at 111). An evidentiary hearing is not required; rather, in determining damages, the Court may rely on detailed affidavits and other documentary evidence. Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991). However, "[i]n the context of a default judgment in a foreclosure action, several courts in the Eastern District of New York have required more than production of the initial mortgage and an affidavit stating the outstanding principal on a loan." Happy Homes, LLC v. Jenerette-Snead, No. 15-CV-1788, 2016 WL 6599826, at *5 (E.D.N.Y. Nov. 7, 2016) (collecting cases).

### A. Damages Due Under the Note

Plaintiff seeks a total of $449,290.71 in damages due under the Note: $379,970.41 in principal owed on the Note; $45,000.01 in accrued interest from May 1, 2020 through June 30, 2023, at a rate of 3.875% per year; $2,058.72 in late charges prior to acceleration of the loan;

9

$22,051.57 in escrow advances, including insurance and tax disbursements;[3] and $210.00 in property inspection fees. Diaz Aff. ¶ 12.

### a. Unpaid Principal Balance

Plaintiff requests an unpaid principal balance of $379,970.41. Diaz Aff. ¶ 12. McLain agreed to pay $402,573.00 in principal. Mortgage, ECF No. 13-6 at 2; Diaz Aff. ¶ 3. As the Note states, in the event of defendant McLain's default, plaintiff may require immediate payment in full of all sums secured by the loan. Note § 6. Diaz certifies that at the time of McLain's default by failing to make the monthly payment due on June 1, 2020, the outstanding principal balance on the note was $379,970.41. Compl. ¶¶ 9–10; Diaz Aff. ¶ 6. Plaintiff's supporting documents establish that defendant McLain failed to make payments on the unpaid principal balance after February 6, 2023. Ex. A, annexed to Diaz Aff., ECF No. 13-3 at 10; see also Happy Homes, LLC v. Jenerette-Snead, No. 15-CV-01788, 2016 WL 6599826, at *5 (E.D.N.Y. Nov. 7, 2016) (collecting cases where the mortgage and plaintiff's affidavit were sufficient to establish damages and cases where courts requested additional records); Raghunath, 2015 WL 5772272, at * 4 (finding that plaintiff's unopposed affidavits stating the amount of the unpaid principal were sufficient to establish damages); United States v. Watts, No. 13-CV-3211, 2014 WL 4275628, at *2 (E.D.N.Y. May 28, 2014), adopted by, 2014 WL 4293815 (E.D.N.Y. Aug. 28, 2014) (concluding that plaintiff's unopposed affidavit stating the outstanding principal, along with a declaration of regularity and review of "all relevant documents," was sufficient to establish damages). The Court recommends that plaintiff should be awarded a judgment against defendant McLain in the amount of $379,970.41 for the unpaid principal balance due on the Note.

---

[3] Plaintiff has credited defendant McLain with $6,135.62 in payments towards the loan. Proposed J. at 2 (listing the paid amount as "Escrow Credit").

### b. Interest

Plaintiff requests $45,000.01 in interest on the unpaid principal balance from May 1, 2020 through June 30, 2023. Proposed J. at 2; Diaz Aff. ¶ 12. The Note provides that interest accrues on the unpaid principal balance at a rate of 3.875% per year. Note, ECF No. 13-5 at 1. Applying the 3.875% annual interest rate to the unpaid principal balance of $379,970.41, interest accrues at a daily rate of $40.34.[4] There are 1,156 days between May 1, 2020 through June 30, 2023. The total interest is thus calculated as follows: 1,156 days * $40.34 per day = $46,632.26. The records reflect that defendant McLain made a late interest payment in the amount of $1,229.13 on August 28, 2020, reducing the interest owed to $45,403.13. Ex. A, annexed to Supp. Diaz Aff., ECF No. 16-1 at 9.

I respectfully recommend that plaintiff be awarded $45,000.01[5] in interest due as of June 30, 2023, plus additional interest at a rate of $40.34 per day from July 1, 2023 until the Court enters judgment.

### c. Pre-Acceleration Late Charges

Plaintiff seeks $2,058.72 in late charges prior to acceleration of the loan. Proposed J. at 2; Diaz Aff. ¶ 12. The Note provides that if a monthly payment of principal and interest is more than fifteen (15) days late, then the borrower must pay a late charge of 4.000% of the amount overdue. Note § 6A; see also Mortgage § 1. The Note also provides that monthly payments will be in the amount of $1,893.05 and due the first day of each month. Note § 3. Plaintiff has provided a "late charge detail panel" reflecting a late charge of $241.44 for payment past due for the month of

---

[4] "Daily interest is calculated as follows: daily interest rate = (outstanding principal * interest rate per annum)/365 days." CIT Bank, N.A. v. Seeram, No. 16-CV-2608, 2017 WL 8220204, at *5 n.11 (E.D.N.Y. Feb. 15, 2017), adopted by, 2018 WL 1308003 (E.D.N.Y. Mar. 13, 2018) (citation omitted). Here, the daily interest rate is calculated as follows: ($379,970.41 * .03875) / 365 = $40.34 per day.

[5] Plaintiff does not explain how it calculated the requested amount of $45,000.01. While the requested amount is less than the Court's calculated interest amount, I recommend that the Court award the amount that plaintiff has requested.

11

August 2018; and late charges of $75.72 for payments past due for the months of September 2018 through February 2020, and October 2022 through January 2023. Ex. B, annexed to Supp. Diaz Aff., ECF No. 16-1 at 19–22. Based on the terms of the Note and Mortgage, $75.72 represents 4.000% of the monthly payment due of $1,893.05, and thus plaintiff has demonstrated with "reasonable certainty" the late charges applied from September 2018 through January 2023. Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155. However, plaintiff provides neither evidence nor explanation of the basis for the late charge of $241.44 for the month of August 2018. Accordingly, the Court recommends that plaintiff be awarded a total of $1,817.28 for pre-acceleration late charges. See E. Sav. Bank, FSB v. Beach, No. 13-CV-341, 2014 WL 923151, at *11 (E.D.N.Y. Mar. 10, 2014) (recommending an award of late charges based on plaintiff's document "provid[ing] a breakdown of all late charges that have accrued since the inception of the loan"); see also E. Sav. Bank, FSB v. Whyte, No. 13-CV-6111, 2015 WL 790036, at *7 (E.D.N.Y. Feb. 24, 2015) (recommending same).

### d. Escrow Advances for Taxes and Insurance

Plaintiff also seeks to recover escrow advances totaling $22,051.57, which plaintiff states is composed of (i) $3,940.00 in hazard insurance; (ii) $11,626.89 in mortgage insurance; and (iii) $12,620.30 in tax disbursements, minus $6,135.62 in escrow payments or "credit." Proposed J. at 2; Diaz Aff. ¶ 12. Pursuant to the Mortgage, defendant McLain is responsible for "Escrow Items," which include taxes, assessments, leasehold payments, and insurance premiums. See Mortgage §§ 3(a), 4; see also Compl. ¶ 10. Plaintiff provides an "escrow detail history" from September 28, 2019 through May 30, 2023 with a breakdown of itemized charges and payments or "credits" that defendant McLain made towards the total escrow balance. Ex. B, annexed to Supp. Diaz Aff., ECF

No. 16-1 at 14–18. According to Diaz, these escrow advances correspond with costs incurred to obtain insurance for the property and pay taxes related to the property. Supp. Diaz Aff. ¶ 8.

Plaintiff has sufficiently demonstrated that it is entitled to recover the cost of insurance and taxes related to the subject property. See ARCPE Holding, LLC v. 9Q4U5E LLC, No. 19-CV-6417, 2022 WL 2467085, at *4 (E.D.N.Y. Apr. 15, 2022) (finding that plaintiff's sworn affidavit accompanied by a schedule detailing monthly escrow advances was sufficient to recommend an award of damages with respect to insurance costs). The Court also confirms the accuracy of plaintiff's calculations with the exception of one error: the escrow detail history reflects a balance of $7.67 on September 28, 2019. Ex. B, annexed to Supp. Diaz Aff., ECF No. 16-1 at 14. On October 7, 2019, $267.49 in mortgage insurance was applied to the balance, which resulted in a balance of $259.82. Id. However, the escrow detail history reflects a balance of $259.52 on October 7, 2019. Id. Accounting for plaintiff's error, the correct total in escrow advances is $22,051.87 as of May 30, 2023. Therefore, the Court recommends that plaintiff should be awarded $22,051.87 in escrow advances.

### e. Other Fees & Disbursements

Plaintiff also seeks to recover $210.00 in property inspection fees. Proposed J. at 2; Diaz Aff. ¶ 12. Plaintiff is entitled to "fees for services performed in connection with [defendant's] default, for the purpose of protecting [plaintiff's] interest in the Property and rights under [the Mortgage], including, but not limited to,…property inspection and valuation fees" under the Mortgage. See Mortgage § 13. Plaintiff has provided a fee log that includes, *inter alia*, individual property inspections fees, the fee amounts, and the dates assessed. Ex. B, annexed to Supp. Diaz Aff., ECF No. 16-1 at 13. According to the fee log, the total in property inspection fees for the

Property is $195.00. Id. However, the fee log and Diaz's supplemental affidavit also reflect a "NSF Fee" in the amount of $15.00 from January 2019.[6] Supp. Diaz Aff. ¶ 7; Ex. B, annexed to Supp. Diaz Aff, ECF No. 16-1 at 13. Accordingly, plaintiff should be awarded $210.00 in property inspection and NSF fees as part of the default judgment award. See E. Sav. Bank, FSB v. Johnson, No. 13-CV-6070, 2022 WL 18858919, at *5 (E.D.N.Y. Dec. 27, 2022), report and recommendation adopted, No. 13-CV-6070, 2023 WL 1778788 (E.D.N.Y. Feb. 6, 2023) (recommending an award of NSF fees as part of a default judgment in a similar foreclosure action).

### B. Attorney's Fees and Costs

Plaintiff seeks attorney's fees in the amount of $5,650.00 and $973.05 in costs. Bill of Costs, ECF No. 13-15 at 1; Atty. Decl. ¶ 7, ECF No. 13-16. The Note provides that:

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include for example, reasonable attorneys' fees.

Note § 6E. Thus, plaintiff is entitled to recover reasonable attorney's fees and costs resulting from the foreclosure proceeding and defendant McLain's default.

In this Circuit, the amount of attorney's fees to award a prevailing party is determined by calculating the "presumptively reasonable fee." Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 172 (2d Cir. 2009). To determine this fee, the Court begins by multiplying the number of hours spent on the litigation by "a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424,

---

[6] Diaz's supplemental affidavit provides "1/01/2019" as the date the fee was assessed, while the fee log provides a date of "1/10/2019." As noted in supra note 2, although these are small discrepancies in the scheme of things, plaintiff's records illustrate counsel's inattention to detail in preparing the instant motion.

14

433 (1983). A reasonable rate is "the rate a paying client would be willing to pay," based on the "prevailing [hourly rate] in the community . . . . where the district court sits."[7] Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 190 (2d Cir. 2007). "The burden is on the party moving for attorney's fees to justify the hourly rate sought." Ehrlich v. Royal Oak Fin. Servs., Inc., No. 12-CV-3551, 2012 WL 5438942, at *3 (E.D.N.Y. Nov. 7, 2012) (citing Hensley, 461 U.S. at 437). In this Circuit, "contemporaneous time records are a prerequisite for attorney's fees". N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).

Here, plaintiff seeks attorney's fees in the amount of $5,650.00, which represents a flat fee charged by plaintiff's counsel in this matter. See Atty. Decl. ¶ 5. As a result of counsel charging a flat fee, plaintiff has not provided contemporaneous time records. Id. ¶ 6 ("[b]ecause this office charges a flat fee for foreclosure work, individual time sheets are not maintained."). Rather, plaintiff's counsel provides an affidavit describing the work done on the matter, including a review of the case file, foreclosure search and supporting documents; preparation of the complaint and motion for a default judgment; and the time expended. See id. In similar cases, courts in this District have denied fee requests where plaintiff failed to maintain contemporaneous time records. See Dambra, 2015 WL 7430006, at *8 (denying plaintiff's request for a $3,500 flat fee for foreclosure work for failing to provide contemporaneous attorney time records); OneWest Bank,

---

[7] In determining the reasonable hourly rate, the Court should consider the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorneys' customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Arbor Hill, 522 F.3d at 186 n.3 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974)).

N.A. v. Cole, No. 14-CV-3078, 2015 WL 4429014, at *6 (E.D.N.Y. July 17, 2015) (adopting report & recommendation that denied attorneys' fees for failing to provide contemporaneous time records). However, with flat fee arrangements becoming more common, several courts have recognized attorney's fees can be awarded without contemporaneous time records. See, e.g., Incredible Foods Grp., LLC v. Unifoods, S.A. De C.V., No. 14-CV-5207, 2016 WL 4179943, at *6 (E.D.N.Y. Aug. 5, 2016) (reducing attorney's flat-fee request of $5,000.00 by 10% to account for the lack of contemporaneous time records) (citing cases where Courts made similar reductions); see also Raghunath, 2015 WL 5772272 (reducing attorney's flat-fee request to $2,500.00 absent contemporaneous time records in a similar default motion); Onewest Bank v. Serbones, No. 14-CV-7281, 2016 WL 1295197, at *6 (E.D.N.Y. Mar. 7, 2016), report and recommendation adopted as modified sub nom., OneWest Bank, N.A. v. Serbones, 2016 WL 1306545 (E.D.N.Y. Mar. 31, 2016) (same).

Upon review of the record in this matter and the work described in counsel's affidavit, the Court recommends awarding plaintiff attorney's fees. However, in light of counsel's failure to provide contemporaneous time records, and the inauspicious quality of plaintiff's motion, I recommend that plaintiff's attorney's fees should be reduced by 50%. See Incredible Foods, 2016 WL 4179943, at *6 (collecting cases where fees were reduced because adequate contemporaneous time records were not kept); see also Raghunath, 2015 WL 5772272 (recommending $2,500.00 instead of the flat rate of $3,500.00 due to the lack of time records). Accordingly, the Court recommends that plaintiff should be awarded $2,825.00 in attorney's fees.[8]

Plaintiff also seeks $973.05 in costs. Plaintiff submits a bill of costs requesting $402.00 for the filing fee, $475.00 for service of process, $36.05 for the filing of the Notice of Pendency

---

[8] A 50% reduction from the requested $5,650.00 flat fee results in an award of $2,825.

16

pursuant to CPLR § 8021(a)(10), and $60.00 for "skip trace fees" pursuant to CPLR § 8301(d). Bill of Costs, ECF No. 13-15 at 1. The Court finds these costs are reasonable. See CIT Bank, N.A. v. Paganos, No. 14-CV-3987, 2016 WL 3945343, at *2 (E.D.N.Y. July 19, 2016) (adopting report & recommendation) (granting costs for the federal filing fee, title searches, process server costs, and notice of pendency filings); E. Sav. Bank, FSB v. Beach, No. 13-CV-0341, 2014 WL 923151, at *1 (E.D.N.Y. Mar. 10, 2014) (adopting report & recommendation) (awarding costs for filing fee, service of process, foreclosure report, filing of *lis pendens*, and certified copies). Therefore, plaintiff should be awarded $973.05 in costs.

## CONCLUSION

Accordingly, pursuant to Fed. R. Civ. P. 54(b), it is respectfully recommended that the plaintiff's motion should be granted in part, and the Court should enter a default judgment in favor of plaintiff and against defendant McLain as follows:

- $379,970.41 for the principal due on the Note;

- $45,000.01 in accrued interest due on the Note calculated from May 1, 2020 through June 30, 2023, plus *per diem* interest of $40.34 until the date of entry of judgment;

- $2,058.72 in late charges prior to acceleration;

- $22,051.87 in escrow advances;

- $210.00 in other fees and disbursements; and

- $2,825.00 in attorneys' fees and $973.05 in costs.

Additionally, the Court should enter a default judgment in favor of plaintiff against defendant New York City Environmental Control Board foreclosing its interests in the subject property. I recommend that default judgment against the New York City Parking Violations Bureau and the New York City Transit Adjudication Bureau should be denied without prejudice.

17

I further recommend that the Court should order the foreclosure and sale of 182-14 146th Road, Springfield Gardens, NY 11413 and that Stephanie S. Goldstone, Esq. should be appointed as referee for the foreclosure and sale.

Plaintiff is hereby ordered to serve a copy of this Report on defendants at their last known addresses and file proof of service with the Court forthwith. Should this Recommendation be adopted, plaintiff shall file a revised Order of Judgment and Foreclosure reflecting the amounts set forth in this Report within fourteen (14) days.

### FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

SO ORDERED.

                                                            /S/
                                          LOIS BLOOM
                                          United States Magistrate Judge

Dated: October 12, 2023
       Brooklyn, New York